IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DENNIS GRIEGO,

     Movant,

v.                                    1:23-cv-00190-WJ-JMR

UNITED STATES OF AMERICA,

     Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

THIS MATTER comes before the Court on Dennis Griego's Motion to Vacate Sentence Under 28 U.S.C. § 2255. Doc. 1. The United States filed a response, as ordered by the Court. Docs. 3, 7. Mr. Griego filed a reply. Doc. 10. Mr. Griego requested supplemental briefing, which the Court allowed. Docs. 11, 12. Mr. Griego filed a supplemental brief (Doc. 15), the United States filed a supplemental response (Doc. 20), and Mr. Griego filed a supplemental reply (Doc. 27). Senior District Judge William P. Johnson referred the case to me pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (b)(3) to conduct hearings, if warranted, and to perform any legal analysis required to recommend to the Court an ultimate disposition of this case. Doc. 4. Having reviewed the parties' submissions and the relevant law, I recommend that the Court deny Mr. Griego's motion and deny a certificate of appealability.

## I.  Background

On July 5, 2018, Mr. Griego pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). Doc. 60, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed July 5, 2018). At his sentencing hearing, this Court was required to calculate Mr. Griego's correct sentencing guideline range. *Gall v. United States*, 552 U.S. 38, 51 (2007). In doing so, it held that Mr. Griego qualified as an armed career criminal pursuant to the Armed

Career Criminal Act ("ACCA"). Doc. 76 at 1, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed March 22, 2019); *see also* 18 U.S.C. § 924(e). In other words, the Court found that Mr. Griego had "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e). Because of the ACCA application, Mr. Griego was subject to a mandatory minimum sentence of fifteen years' (180 months') imprisonment. *Id.* Without the ACCA enhancement, Mr. Griego would have faced a maximum statutory sentence of ten years' (120 months') imprisonment. Doc. 1 at 25; *see also* 18 U.S.C. § 922(g)(1).

As part of his plea agreement with the government, Mr. Griego stipulated to a 188-month sentence of imprisonment pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Doc. 60, *United States v. Griego*, No. 16-cr-3868-WJ-JMR, (D.N.M. filed Sept. 27, 2016). However, the Court rejected the parties' agreement. Doc. 61, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed July 5, 2018). The Court, instead, sentenced Mr. Griego to the mandatory minimum sentence of 180 months' imprisonment.[1] Doc. 75, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed Feb. 21, 2019); Doc. 76, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed March 22, 2019).

---

[1] There is some discrepancy between the parties' briefs and the underlying Court documents as to whether Mr. Griego was sentenced to 188 months' imprisonment—as the plea agreement states and as Mr. Griego sets forth in his motion (Doc. 1 at 2)—or 180 months' imprisonment as the sentencing minutes, the judgment, and the government states in its response (Doc. 7 at 2). To resolve this question, I looked to the hearing minutes and a transcript of the sentencing hearing. The minutes indicated that at the sentencing hearing this Court rejected the "11(c)(1)(C) plea agreement." Doc. 61, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed July 5, 2018). Such a rejection comports with a sentence that is different from the parties' agreed-upon sentence of 188 months. In the transcript, the Court explicitly states it is rejecting the plea agreement and is sentencing Mr. Griego to 180 months' imprisonment. Doc. 84 at 3–9, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed Jan. 16, 2024).

Notably, at the time of sentencing, Mr. Griego had five prior convictions for offenses that appeared to qualify as ACCA predicates. Doc. 1 at 2; *see* 18 U.S.C. § 924(e). The five offenses were two residential burglaries, a commercial burglary, trafficking methamphetamines, and an aggravated battery. Doc. 1 at 2. At the sentencing hearing, the district court did not state which convictions it relied on to find Mr. Griego ACCA eligible. *See generally* Doc. 84, *United States v. Griego*, No. 16-cr-3868-WJ-JMR (D.N.M. filed Jan. 16, 2024).

## II.    Mr. Griego's Claims

Mr. Griego now challenges whether three of his five state court convictions count as ACCA predicate offenses. Doc. 1; *see* 18 U.S.C. § 924(e) (enhancing a sentence if a person has three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another"). First, Mr. Griego argues that his conviction for commercial burglary is not a "violent felony," and therefore, is not an ACCA predicate. Doc. 1 at 24. Second, Mr. Griego argues that his drug trafficking conviction was not a "serious drug offense," and therefore, is not an ACCA predicate. *Id.* at 25. Third, Mr. Griego argues that his two residential burglaries occurred on the same "occasion," and therefore, only one burglary counts as an ACCA predicate. *Id.* at 3–13. Finally, Mr. Griego also argues that his Fifth and Sixth Amendment rights were violated when a judge, not a jury, decided whether his two burglaries occurred on separate occasions. *Id.* at 14–23; Doc. 15 at 3–19.

In the supplemental briefing, Mr. Griego further argues that the Supreme Court's holding in *Erlinger v. United States* applies retroactively to him. *See* 602 U.S. 821 (2024). In *Erlinger*, the Supreme Court held that a defendant is "entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Id.* at 835.

3

As discussed below, Mr. Griego is correct that his commercial burglary and drug trafficking convictions are not ACCA predicate offenses. *Infra* § V.A–B. However, contrary to his third claim, his two prior residential burglaries did not occur on the same "occasion," and therefore, were properly considered as two separate convictions under the ACCA. *Infra* § V.C.i. Finally, because the Supreme Court's decision *Erlinger* does not apply retroactively, Mr. Griego's constitutional rights were not violated when a judge decided whether his two burglaries occurred on different occasion. *Infra* § V.C.ii. As a result, Mr. Griego is still convicted of three ACCA predicate offenses—the two residential burglaries and an aggravated battery[2]—and he remains subject to the ACCA mandatory minimum sentence.

## III. Section 2255 Review

Under 28 U.S.C. § 2255(a), a person in federal custody may challenge their sentence if it was made "in violation of the Constitution or laws of the United States." If the challenge is successful, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A § 2255 motion is timely if it is filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). Mr. Griego argues that his motion is timely because it was filed within one

---

[2] Mr. Griego does not challenge whether his aggravated battery conviction is an ACCA predicate. *See generally* Doc. 1.

year of the Supreme Court's decision in *Wooden v. United States*. 595 U.S. 360 (2022); Doc. 1 at

3. *Wooden* was decided March 7, 2022. Mr. Griego's motion was filed March 6, 2023. Doc. 1.

The government originally declined to raise or address the affirmative defense of untimeliness.

*See generally* Doc. 7. "Ordinarily in civil litigation, a statutory time limitation is forfeited if not

raised in a defendant's answer or in an amendment thereto." *Wood v. Milyard*, 566 U.S. 463, 470

(2012); *see also United States v. Miller*, 868 F.3d 1182, 1188-86 (10th Cir. 2017) (applying

*Wood* to the § 2255(f)(3) context). Notably, unlike waiver, forfeiture does not require "knowing"

or "intelligent" relinquishment of the defense. *Wood*, 566 U.S. at 470 n.4. Regardless, in its

response to Mr. Griego's supplemental motion to vacate (Doc. 20) the government affirmatively

confirms "there is no issue with the timeliness" of Mr. Griego's *Wooden* claim. *Id*. at 2. As such,

I find that the government has forfeited the argument that the initial motion was untimely.

In the government's supplemental briefing, it argues that only Mr. Griego's "*Erlinger*

claim . . . is not timely because *Erlinger* is not retroactive and thus does not fall within Section

2255(f)(3)." Doc. 20 at 2. While I ultimately agree that *Erlinger* is not retroactive on collateral

review, *infra* § V.C.ii, it is a misnomer to characterize Mr. Griego's argument—that his Fifth and

Sixth Amendment rights were violated when a judge, not a jury, decided that his two residential

burglaries occurred on one occasion—as an "*Erlinger* claim." Mr. Griego raised this argument in

his initial briefing filed over a year before *Erlinger* was decided. Accordingly, his constitutional

arguments are not based in *Erlinger*. Therefore, I find that the government has already forfeited

the argument that Mr. Griego's constitutional arguments are untimely.

**IV.    Procedural Default**

    **A.  Mr. Griego is not procedurally defaulted from raising his *Wooden*-based argument.**

Mr. Griego is not procedurally defaulted from raising his *Wooden*-based argument that his two residential burglaries occurred on different occasions. *See Wooden*, 595 U.S. at 366. In its response brief, the government argues that Mr. Griego is procedurally defaulted from challenging whether his two residential burglary convictions occurred on different occasions. Doc. 7 at 6–8. Mr. Griego responds that, in light of the Supreme Court's decision in *Wooden*, he is excused from not preserving the argument. Doc. 10 at 1–4. I agree with Mr. Griego. Notably, the government does not raise procedural default as to Mr. Griego's other claims, even though he similarly failed to raise the arguments at the district court. *See generally* Doc. 7. *But see infra* § IV.B (declining to address arguments raised for the first time in the supplemental briefing).

"[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review." *United States v. Snyder*, 871 F.3d 1122, 1126 (10th Cir. 2017) (alterations in original) (quoting *Massaro v. United States*, 538 U.S. 500, 504 (2003)). To overcome a procedural default, a movant must show both (1) cause and (2) prejudice. *Id.* at 1127.

Good cause for procedural default is shown if a claim "is so novel that its legal basis [wa]s not reasonably available to counsel." *Id.* (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). For example, a decision that "overtur[ns] a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly approve[d]," can create cause for excusing procedural default. *Reed*, 468 U.S. at 17 (citation omitted). Counsel's failure to raise a reasonably available legal argument does not excuse procedural default, even if the argument was likely to fail. *Id.* at 15. Alternatively, there is

6

cause for excusing procedural default if a "constitutional error in [the defendant's] plea colloquy has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citation omitted).

Prejudice excusing procedural default must have worked to an "actual and substantial disadvantage," to the movant. *Snyder*, 871 F.3d at 1128 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). The prejudice must have "result[ed] from the errors of which [the movant] complains." *Id.* at 1127 (quoting *Frady*, 456 U.S. at 168). "A sentence that is not authorized by law is certainly an 'actual and substantial disadvantage' of 'constitutional dimensions.'" *Id.* at 1128.

Mr. Griego showed cause for failing to preserve his *Wooden*-based claim that his residential burglaries—which occurred in separate locations on the same day—were committed on one occasion. The government argues that Mr. Griego had sufficient opportunity to dispute the finding that Mr. Griego's two residential burglaries were committed on two different occasions. Doc. 7 at 6–8. Mr. Griego responds that the legal basis for his claim is so novel that it could not have been made before *Wooden*. Doc. 10 at 2–3. As discussed in more detail *infra* § V.C.i, *Wooden* significantly expanded the definition of an "occasion" under the ACCA. Prior to *Wooden*, the Tenth Circuit generally found that two offenses occurred on different occasions so long as they were "distinct in time."[3] *United States v. Michel*, 446 F.3d 1122, 1134 (10th Cir.

_____

[3] Pre-*Wooden*, most other circuits held the same. *Wooden*, 595 U.S. at 365 n.1 (collecting cases). However, the First and Second Circuit each took moderately more "holistic inquir[ies]" into the ACCA occasions question, "considering not merely the precise timing but also other circumstances of the crimes." *Wooden*, 595 U.S. at 365 n.2 (citing *United States v. Stearns*, 387 F.3d 104 (1st Cir. 2004) and *United States v. Bordeaux*, 886 F.3d 189 (2d Cir. 2018)). But in either circuit, a temporal "break" between two crimes, as is the case for Mr. Griego, was still dispositive of the two crimes occurring on separate occasions. *See Stearns*, 387 F.3d at 108

2006). In *Wooden*, the Supreme Court modified this approach requiring that a court consider a "range of circumstances" as part of a "multi-factored" analysis to determine what constitutes an "occasion." *Wooden*, 595 U.S. at 369. Thus, under the pre-*Wooden* analysis of an "occasion," there was not a reasonable legal basis to argue that Mr. Griego's two residential burglaries, which occurred at two separate locations, albeit on the same day, could arguably be considered one "occasion" for purposes of the ACCA.[4] *Wooden* was decided in March of 2022, and Mr. Griego pleaded in 2018. *Id.* at 3. As such, Mr. Griego's counsel did not have a reasonable basis for raising the novel *Wooden*-based legal argument. *See Snyder*, 871 F.3d at 1127; *see also* Rule

---

(noting "the crucial distinction between (i) a time interval during which defendant successfully has completed his first crime, safely escaped, and which affords defendant a 'breather,' *viz.*, a period (however brief) which is devoid of criminal activity and in which he may contemplate whether or not to commit the second crime; and (ii) a time lapse which does not mark the endpoint of the first crime, but merely the natural consequence of a continuous course of extended criminal conduct."); *Bordeaux*, 886 F.3d at 196 ("[W]e consider whether the defendant had a realistic opportunity for substantial reflection between offenses during which time he could have chosen to end his criminal activity.") (quotation omitted).

Only post-*Wooden* could a court reasonably find that two crimes that occurred at meaningfully different times occurred on the same occasion. *See, e.g.*, *United States v. Kimbrough*, No. 23-5529, 2025 WL 1453274, at *4 (6th Cir. 2025) ("And even if the burglaries were committed nine days apart, that would not necessarily establish beyond a reasonable doubt that they constituted 'separate occasions.'"); *United States v. Alkheqani*, 78 F.4th 707, 727 (5th Cir. 2023) (remanding for resentencing to determine whether four offenses that occurred on three different dates occurred on the same occasion).

[4] Notably, this Court is aware of one case in the Tenth Circuit where a defendant argued pre-*Wooden* that three burglaries that occurred on separate days counted as the same "occasion," under ACCA. *See United States v. Dutch*, 753 F. App'x 632 (10th Cir. 2018) (unpublished). However, the crux of the argument in *Dutch* is quite distinct from any argument available to Mr. Griego. In *Dutch*, the defendant unsuccessfully argued that the three burglaries occurred on one occasion because they were each part "of one continuous drug-fueled enterprise," which "deprived him of a meaningful opportunity to cease his criminal conduct." *Id.* at 633. In Mr. Griego's case, there are no allegations that he was in a continuous, altered state of mind at the time of his two burglaries.

3.1, ABA Model Rules of Prof'l Cond. ("A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous . . . ."). Mr. Griego has made a sufficient showing of cause for excusing procedural default.

Because I find that Mr. Griego showed cause for procedural default based on a novel legal claim, I decline to address his arguments that he showed cause because his counsel was unconstitutionally ineffective and Mr. Griego is actually innocent. *See* Doc. 10 at 3–4; *see also Bousley*, 523 U.S. at 623.

Mr. Griego is also prejudiced by this alleged *Wooden* error. Mr. Griego argues that he was "plainly prejudiced" because if his claim is successful, his original sentence was unlawful. Doc. 1 at 23. As Mr. Griego was subject to an ACCA enhancement, he faced a fifteen-year mandatory minimum sentence. 18 U.S.C. § 924(e)(1). Without such an enhancement, Mr. Griego would have faced a maximum sentence of just ten years. 18 U.S.C. § 922(g)(1); *see infra* § V. As such, Mr. Griego's sentence of fifteen years would have been illegal. *See Snyder*, 871 F.3d at 1128 (citation and quotation omitted) (holding that an illegal sentence "is certainly an actual and substantial disadvantage of constitutional dimensions"). Therefore, Mr. Griego sufficiently demonstrates prejudice excusing procedural default.

Because Mr. Griego showed both cause and prejudice, Mr. Griego has overcome procedural default for failing to raise his *Wooden*-based claim.

### B.  I decline to consider the government's additional procedural default arguments raised in the limited supplemental briefing.

The government's supplemental briefing contains additional argument regarding whether Mr. Griego's *Wooden* claim was procedurally defaulted. Doc. 20 at 3–5. The Court authorized

limited supplemental briefing in light of the Supreme Court's decision in *Erlinger*. Doc. 12. The supplemental briefing was not meant to be an opportunity for the government to bolster its original briefing. As such, I do not consider any supplemental argument the government made that is not responsive to Mr. Griego's supplemental briefing, including the government's additional arguments relating to procedural default.

## V.    Merits

Mr. Griego argues that his sentence was illegally enhanced under the ACCA because three of his five allegedly ACCA-predicate offenses were not actually ACCA predicates. Doc. 1. Under the ACCA, a person is subject to a sentencing enhancement if they have three previous convictions "for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e). While I agree that two of Mr. Griego's convictions were not ACCA predicates, the third challenged conviction is an ACCA predicate. Therefore, Mr. Griego still has three prior convictions for purposes of the ACCA, and he remains subject to the fifteen-year mandatory minimum sentence.

### A.  Mr. Griego's commercial burglary conviction is not an ACCA predicate offense.

Mr. Griego argues that his New Mexico commercial burglary conviction is not an ACCA predicate because it is not a "violent felony." Doc. 1 at 24; 18 U.S.C. § 924(e)(1). The government does not respond to or even acknowledge this argument. Doc. 7; *see Cayetano-Castillo v. Lynch*, 630 F. App'x 788, 794 (10th Cir. 2015) (holding that a party does not concede an argument when it fails to respond, but "as a practical matter" waives "any objections not obvious to the court"). I agree that Mr. Griego's New Mexico commercial burglary conviction is not an ACCA predicate. *See* 18 U.S.C. § 924(e)(1).

Under the ACCA, generic felony burglary is a "violent felony." 18 U.S.C. § 924(e)(2)(B)(ii). However, the ACCA's definition of burglary is narrower than the crimes encompassed by the New Mexico commercial burglary statute. *United States v. King*, 422 F.3d 1055, 1057 (10th Cir. 2005) (holding the same). When interpreting the ACCA, the Court has defined "burglary" as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* (quoting *Taylor v. United States*, 495 U.S. 575, 599 (1990)). The New Mexico commercial burglary statute defines burglary more broadly as unlawful entry into "any vehicle, watercraft, aircraft, dwelling or other structure." N.M. Stat. Ann. § 30-16-3. Therefore, Mr. Griego's New Mexico commercial burglary conviction is not categorically a "violent felony."[5] *See King*, 422 F.3d at 1058.

As such, Mr. Griego's commercial burglary conviction is not an ACCA predicate. *See* 18 U.S.C. § 924(e)(1).

**B.  Mr. Griego's drug trafficking conviction is not an ACCA predicate.**

Mr. Griego next argues that his drug trafficking conviction is not an ACCA predicate because it is not a "serious drug offense," as it carries a maximum sentence of nine years. Doc. 1 at 25; 18 U.S.C. § 924(e)(1). The government responds that while the basic sentence is a maximum of nine years, under New Mexico law regarding aggravating circumstances, Mr. Griego was actually exposed to a maximum sentence of twelve years. Doc. 7 at 8–9. I agree with Mr. Griego.

---

[5] Because the New Mexico commercial burglary statute is not divisible, the modified categorical approach does not apply. *Descamps v. United States*, 570 U.S. 254, 260–65 (2013).

11

Under ACCA, a "serious drug offense" is defined, in relevant part, as an offense "for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

Mr. Griego's drug trafficking conviction involved him pleading no contest to trafficking methamphetamines in violation of N.M. Stat. Ann. § 30-31-20, a second-degree felony. Doc. 7-8 (Exh. 8). As a New Mexico second degree felony, the maximum basic sentence is nine years' imprisonment. N.M. Stat. Ann. § 31-18-15(A)(6). At the time Mr. Griego was sentenced for his drug trafficking offense, a New Mexico state court could have deviated from the basic maximum sentence if it found that there were "aggravating circumstances surrounding the offense or concerning the offender." N.M. Stat. Ann. § 31-18-15.1(A) (2007); Doc. 7-9 at 1 (Exh. 9).[6] Absent such a finding, the statutory maximum for the basic sentence remained the same. *State v. Gonzales*, 1981-NMCA-086, ¶ 15, 96 N.M. 556, 632 P.2d 1194; *see also United States v. Romero-Leon*, 622 F. App'x 712, 718 (10th Cir. 2015) (unpublished) (in determining whether a defendant's prior convictions were serious drug offenses for purposes of the ACCA, where the state took no affirmative steps to enhance a defendant's sentence under N.M. Stat. Ann. § 31-18-15.1, the defendant faced no more than a nine-year sentence under N.M. Stat. Ann. § 31-18-15). Neither party has provided any evidence that the State of New Mexico requested, or that the state court even considered, an enhanced sentence for Mr. Griego's drug trafficking crime.[7] *Romero-*

---

[6] Notably, by the time Mr. Griego was committed for his drug trafficking offense, this version of N.M. Stat § 31-18-15.1 had been declared unconstitutional. *State v. Frawley*, 2007-NMSC-057 ¶ 25, 143 N.M. 7, 172 P.3d 144; Doc. 7-9 (Exh. 9).

[7] Although Mr. Griego was sentenced to ten-and-a-half years' incarceration, the time period is not dispositive as the state court sentenced Mr. Griego for three separate criminal matters.

*Leon*, 622 F. App'x at 719 (allowing a federal judge to "apply its own enhancement well after the fact 'would denigrate the independent judgment' of New Mexico to execute its own laws.") (quoting *Carachuri–Rosendo v. Holder,* 560 U.S. 563, 579–80 (2010)). Therefore, the maximum sentence for Mr. Griego's drug trafficking conviction was nine years. *See* N.M. Stat. Ann. § 31-18-15(A)(6).

Mr. Griego's drug trafficking conviction was not a "serious drug offense" under the ACCA. 18 U.S.C. § 924(e)(2)(A)(ii) (defining a "serious drug offense" as one "for which a maximum term of imprisonment of ten years or more is prescribed by law").

### C.  Mr. Griego's two residential burglaries are each ACCA predicate offenses.

Mr. Griego next argues that (1) in light of *Wooden*, only one of his two residential burglaries can be counted as ACCA predicates because they occurred on the same "occasion," and (2) his Fifth and Sixth Amendment rights were violated when a judge, not a jury, decided whether the residential burglaries occurred on the same occasion. Doc. 1 at 3–23. The government responds that (1) even considering *Wooden*, the two residential burglaries occurred on separate occasions, and (2) Mr. Griego's constitutional claims are foreclosed by precedent because *Erlinger* does not apply retroactively. Doc. 7 at 9–19. I agree with the government on both points.

### i.   Mr. Griego's two residential burglaries occurred on different occasions.

The ACCA "contains *both* a three-offense requirement *and* a three-occasion requirement. *Wooden*, 595 U.S. at 368. Two offenses only count as separate ACCA predicates if they were "committed on occasions different from one another." 18 U.S.C. § 924(e)(1). At Mr. Griego's sentencing, the burden was on the government to prove by a preponderance of the evidence that

two or more offenses occurred on different occasions. *United States v. Delossantos*, 680 F.3d 1217, 1219 (10th Cir. 2012) (citation omitted). *But see Erlinger*, 602 U.S. at 835 (intervening change in law holding that a judge may not decide whether two ACCA predicate offenses occurred on different occasions); *see also infra* § V.C.ii (explaining that *Erlinger* does not apply retroactively to Mr. Griego's case).

The test for whether offenses were committed on different occasions was significantly modified in *Wooden*.[8] 595 U.S. at 366–71. Pre-*Wooden*, when Mr. Griego was sentenced, the Tenth Circuit generally held that two offenses occurred on different occasions so long as they were "distinct in time." *Michel*, 446 F.3d at 1134. Post-*Wooden*, however, courts are to use a more nuanced, multi-factor test to determine whether two or more offenses were committed on different occasions. *Wooden*, 595 U.S. at 369.

The *Wooden* factors include timing of the offense, proximity of location, and character and relationship of the offenses. *Id.* "In many cases, a single factor—especially of time or place—can decisively differentiate occasions." *Id.* at 369–70. For example, courts "have nearly always treated offenses as occurring on separate occasions if a person committed them a day or more apart, or at a 'significant distance.'" *Id.* at 370 (quoting *United States v. Rideout*, 3 F.3d 32, 35 (2d. Cir. 1993)). In some cases, "a thirty-minute gap may divide crimes into two distinct occasions." *United States v. Gallimore*, 71 F.4th 1265, 1269 (10th Cir. 2023) (citing *Rideout*, 3 F.3d at 35).

---

[8] The parties concede *Wooden*'s retroactive effect on the question of whether offenses are committed on different occasions. Doc. 1 at 3–4; Doc. 7 at 9.

The Tenth Circuit has said that *Rideout* "provide[s] useful illustrations" of the post-*Wooden*—and pre-*Erlinger*—approach to the "application of time and location." *Gallimore*, 71 F.4th at 1268. In *Rideout*, the defendant was convicted of breaking and entering into two residences—on the same day—as part of an uninterrupted "crime spree." *Rideout*, 3 F.3d at 33. The two residences were twelve to thirteen miles apart, twenty to thirty minutes driving distance, and in two different counties. *Id.* The *Rideout* court held that the two offenses occurred on separated "occasions," in large part, because the defendant "traveled a significant distance between the two offenses during which time he could have chosen to end his criminal activity." *Id.* at 35.

As to *Wooden*'s "character and relationship of the offenses" factor, offenses that "share a common scheme or purpose," are more likely to be considered one "occasion." *Wooden*, 595 U.S. at 369. However, "commonality does not dictate one occasion without more." *Gallimore*, 71 F.4th at 1269.

When deciding whether two offenses occurred on different occasions, courts can only look to select documents. *United States v. Harris*, 447 F.3d 1300, 1305 (10th Cir. 2006). Those documents are the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005) (sometimes called "*Shepard* documents"). Initially, the government asked this Court to look to the underlying police reports to determine whether Mr. Griego's residential burglaries occurred on separate occasions. Doc. 7 at 12–19. However, the government has since rightfully abandoned this argument. Doc. 20 at 7. Courts may not delve

into factual inquiries, including police reports, to enhance a sentence under the ACCA. *Shepard*, 544 U.S. at 19–20.

Here, the relevant *Shepard* documents are the charging documents and plea agreements. *See* Docs. 7-2, 7-3, 7-6, 7-7, 7-8. To paraphrase the *Shepard* documents, Mr. Griego's two residential burglaries were committed on the same day, at unknown times, in the same county, in different locations, with different victims, and they were charged almost one-and-a-half years apart. *Id.* The Court takes judicial notice that the two burglarized houses were also twenty-four-and-a-half miles apart. Doc. 7-5 (Exh. 5); *see also United States v. Orozco-Rivas*, 810 F. App'x 660, 668 n.7 (10th Cir. 2020) (unpublished) (taking judicial notice of a distance as calculated by Google Maps); *United States v. Holder*, 603 F. App'x 368, 370 (6th Cir. 2015), *rev'd on other grounds*, 576 U.S. 1080 (2015) ("Even though maps are not explicitly referenced by the *Shepard* decision, it is proper to use maps to identify the locations of addresses and geographical features contained in documents properly before a sentencing court."). Mr. Griego also does not dispute the distance gleaned from the *Shepard* documents. However, as already noted, the Court will disregard any information contained solely in the submitted police reports and any related arguments. *See* Doc. 7; *Shepard*, 544 U.S. at 19.

Applying the *Wooden* factors to the information the Court may properly consider, I find that the two residential burglaries occurred on separate occasions.

The distance between the two burglarized houses weighs most heavily against Mr. Griego. "[T]he further away crimes take place, the less likely they are components of the same criminal event." *Wooden*, 595 U.S. at 369. Here, Mr. Griego committed one burglary in the city of Albuquerque and the other in the village of Tijeras. Doc. 7 at 14. The two homes were twenty-

16

four-and-a-half miles apart. Doc. 7-5 (Exh. 5). This distance is nearly double the distance that the *Rideout* Court called "significant." *Rideout*, 3 F.3d at 33 (twelve to thirteen miles and twenty to thirty minutes driving distance); *see also United States v. Richardson*, 60 F.4th 397, 400 (7th Cir. 2023) (robberies committed an hour apart and twelve miles away occurred on different occasions). Although technically committed in the same county, this twenty-four-and-a-half-mile distance between two residences located in two different municipalities, strongly suggests that the two offenses occurred on different occasions.

Although the *Shepard* documents do not reflect the specific time of each crime, given the distance, it is reasonable to assume that some period of time must have passed between the two residential burglaries. Mr. Griego argues that "in the scheme of things, 24.5 miles, or 30 minutes, is hardly significant." Doc. 10 at 7. However, at least one court evaluating similar facts disagreed with Mr. Griego's assessment. *See generally Rideout*, 3 F.3d 32. As *Rideout* received positive citation from the Supreme Court in *Wooden*, 595 U.S. at 370, as well as the Tenth Circuit post-*Wooden*, *see Gallimore*, 71 F.4th at 1268, I follow *Rideout*'s reasoning here. In *Rideout*, the Second Circuit reasoned that because the movant "traveled a significant distance [twelve to thirteen miles] between the two offenses during which time he could have chosen to end his criminal activity," the two offenses occurred on different occasions. *Rideout*, 3 F.3d at 35. The same is true here. This Court has no reason to believe that Mr. Griego's two burglaries occurred in "an uninterrupted course of conduct." *Wooden*, 595 U.S. at 369 ("Offenses committed close in time, in an uninterrupted course of conduct, will often count as part of one occasion."). Absent contrary information, the timing factor marginally weighs in favor of the burglaries occurring on separate occasions. *But see United States v. Ellis*, No. 20-4057, 2022 WL 2128835, at *1–2 (4th

Cir. June 14, 2022) (unpublished) (holding that three robberies that occurred on the same day, at unknown times, with the same co-conspirators, in different locations occurred on the same occasion).

 The character and relationship of the offenses do not suggest that the two offenses occurred on the same occasion. Mr. Griego argues that "[i]t is hard to imagine how much more 'similar' two instances of conduct could be if they qualify as the exact same type of offense committed on the exact same day." Doc. 10 at 7 (quoting *Wooden*, 595 U.S. at 369). The government argues that Mr. Griego's interpretation of this factor is overbroad. Doc. 7 at 18–19. I agree with the government. In *Wooden*, the Supreme Court said, "the character and relationship of the offenses may make a difference: The more similar or intertwined the conduct giving rise to the offenses—the more, for example, they share a common scheme or purpose—the more apt they are to compose one occasion." *Wooden*, 595 U.S. at 369. While Mr. Griego's offenses were similar in the sense that they were both burglaries of residential homes, "commonality does not dictate one occasion without more." *Gallimore*, 71 F.4th at 1269. Here, there is no suggestion from the *Shepard* documents or Mr. Griego that the offenses were "intertwined" in any way. *See Wooden*, 595 U.S. at 369.

 Finally, I am not persuaded by Mr. Griego's comparison of the United States Sentencing Guidelines ("USSG") and the *Wooden* occasions analysis. Mr. Griego compares the *Wooden* occasions analysis with the USSG analysis of whether offenses are grouped together for purposes of calculating a defendant's criminal history category. Doc. 1 at 7–8. The government responds, and I agree, that "[w]hile these two analytical structures may share some similarities, they are not the same." Doc. 7 at 17. While creative, Mr. Griego offers no legal support for the

comparison, nor does he point to any other courts that have made the same comparison. As such, I am not persuaded by the assertion that the guidelines may—or may not—have grouped Mr. Griego's residential burglaries together as part of his criminal history category.

For these reasons, I find that Mr. Griego's two residential burglaries occurred on different occasions. *Compare with United States v. Robinson*, No. 2:21-cr-20096-JPM-1, 2023 WL 2525515, at *6 (W.D. Tenn. Mar. 15, 2023) (two robberies occurred on separate occasions when they were committed on the same day, in different locations, investigated by different police departments). Therefore, each residential burglary counts as an ACCA predicate.

> **ii.  Because *Erlinger* does not apply retroactively, Mr. Griego's constitutional rights were not violated by a judge deciding whether his two residential burglaries occurred on the same occasion.**

Both parties agree that Mr. Griego's Fifth and Sixth Amendment rights were violated when a judge, not a jury, decided whether his two residential burglaries occurred on different occasions. Doc. 1 at 14–23; Doc. 7 at 10. In *Erlinger*, the Supreme Court agreed finding that a defendant is "entitled to have a jury resolve ACCA's occasions inquiry unanimously and beyond a reasonable doubt." *Erlinger*, 602 U.S. at 835. Now, Mr. Griego argues that the holding in *Erlinger* applies retroactively to his case. Doc. 15 at 15–18. The government disagrees arguing that precedent forecloses this Court from finding that Mr. Griego's constitutional rights were violated.  Doc. 20 at 8–10.

I find that *Erlinger* announced a new procedural rule that does not apply retroactively. Thus, based on controlling pre-*Erlinger* case law, Mr. Griego's constitutional rights were not violated.

Generally, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S. 288, 310 (1989). Of course, "an old rule" continues to apply "both on direct and collateral review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007). A "new rule" is announced if a case's "result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301.

There are two exceptions to the general bar against retroactivity of new rules: (1) "[n]ew substantive rules generally apply retroactively"; and (2) "new watershed rules of criminal procedure, which are procedural rules implicating the fundamental fairness and accuracy of the criminal proceeding, will also have retroactive effect." *Welch v. United States*, 578 U.S. 120, 128 (2016) (citations and quotations omitted). New procedural rules that fall short of being "watershed" do not apply retroactively on collateral review. *Id.*

"A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Welch*, 578 U.S. at 129. "Procedural rules, by contrast, 'regulate only the *manner of determining* the defendant's culpability.'" *Id.* (quoting *Schriro v. Summerlin*, 542 U.S. 348, 353 (2004)). In *Welch*, the Supreme Court supplied as an example of a procedural rule, "'allocate[ing] decision making authority' between judge and jury." *Id.* at 130 (quoting *Schiro*, 542 U.S. at 353). In *Schiro*, the Court held that cases that "altered the range of permissible methods for determining whether a defendant's conduct is punishable by death, [for example,] requiring that a jury rather than a judge find the essential facts bearing on punishment," are "prototypical procedural rules." *Schiro*, 542 U.S. at 353 (citations omitted)

As a threshold question, this Court must decide whether the rule that a jury must decide whether two ACCA predicate offenses occurred on different occasions is a new rule or is instead an application of old rules. I find that a new procedural rule is announced in *Erlinger*.

Mr. Griego argues that the rule that a jury must decide the ACCA's occasions inquiry is an application of old rules to the holding in *Wooden*. Doc. 15 at 17–18. "The first old rule is the bedrock principle of *Apprendi*." *Id.* at 17. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Supreme Court held "[o]nly a jury may find 'facts that increase the prescribed range of penalties to which a criminal defendant is exposed.'" *Erlinger*, 602 U.S. at 833 (quoting *Apprendi*, 530 U.S. at 490). Similarly, in *Alleyne v. United States*, 570 U.S. 99 (2013), the Supreme Court held, "'[a] fact that increases' a defendant's exposure to punishment, whether by triggering a higher maximum *or* minimum sentence, must 'be submitted to a jury' and found unanimously and beyond a reasonable doubt." *Erlinger*, 602 U.S. at 833 (quoting *Alleyne*, 570 U.S. at 111–13). So, when the Supreme Court in *Wooden* decided that whether two offenses occurred on separate occasions is a fact-intensive inquiry, it follows from the application of *Apprendi* and *Alleyne* that that inquiry must be made by a jury. *See Wooden*, 595 U.S. at 369. Afterall, pre-*Erlinger*, the parties here agreed that Mr. Griego's constitutional rights were violated. Doc. 1 at 14–23; Doc. 7 at 10; *see also Erlinger*, 602 U.S. at 835 ("[T]his case is as nearly on all fours with *Apprendi* and *Alleyne* as any we might imagine.").

The government, in contrast, argues that the rule that a jury must determine ACCA's occasions inquiry is a new procedural rule implicitly created in *Wooden*. Doc. 10 at 9. In reaching the conclusion that the rule is new, the government looks to the controlling precedent at the time Mr. Griego's conviction became final. Doc. 20 at 8. "[A] case announces a new rule if

21

the result was not *dictated* by precedent existing *at the time the defendant's conviction became final.*" *Id.* (quoting *Teague*, 489 U.S. at 301 (second emphasis added by the government)). Mr. Griego's sentence became final in 2019, pre-*Wooden* and pre-*Erlinger*. At that time, no reasonable court would have held that a jury was required to make such a determination. *See, e.g.*, *Michel*, 446 F.3d at 1132–35 (holding that "whether prior convictions happened on different occasions from one another is not a fact required to be determined by a jury but is instead a matter for the sentencing court"). In keeping with the government's pre-*Erlinger* concession that Mr. Griego's rights were violated, the government argues that this new rule must have come from *Wooden*.

This Court cannot find that the rule that a judge may not answer ACCA's occasions inquiry flowed from *Wooden* because the Tenth Circuit expressly held otherwise post-*Wooden* (and pre-*Erlinger*). *See United States v. Reed*, 39 F.4th 1285, 1294–97 (10th Cir. 2022). In *Reed*, the Tenth Circuit affirmed its decision in *Michel* holding: "[W]hether prior convictions happened on different occasions from one another is not a fact required to be determined by a jury but is instead a matter for the sentencing court." *Id.* (quoting *Michel*, 446 F.3d at 1133); *see also Gallimore*, 71 F.4th at 1269 (affirming *Reed*). The Tenth Circuit went on to comment, "[t]he Supreme Court may disagree with our prior precedent and reach a different result in the future, but until then *Michel* remains the law of this Circuit." *Reed*, 39 F.4th at 1296. And the Supreme Court ultimately did reach a different result in *Erlinger*. *See Erlinger*, 602 U.S. at 835. Accordingly, a district court in the Tenth Circuit could only find that a defendant's rights were violated if a judge decided the ACCA's occasions inquiry after *Erlinger* was decided.  Given the timeline of the cases, this rule must flow from *Erlinger*, not *Wooden*.

For largely the same reason, I find that *Erlinger*'s holding is a new rule, not an application of old rules. Undoubtedly, the *Erlinger* decision is based on the application of *Apprendi* and *Alleyne*. *See Erlinger*, 602 U.S. at 835. But *Teague* provides specific guidance on how to determine whether a case announces a new rule: "[A] case announces a new rule if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague*, 489 U.S. at 301. At the time Mr. Griego's conviction became final in 2019, a court could not have found that a jury was required to decide ACCA's occasions inquiry. *See Michel*, 446 F.3d at 1133 (holding in 2006 that "whether prior convictions happened on different occasions from one another is not a fact required to be determined by a jury"). Accordingly, the requirement that a jury decide whether two ACCA predicate offenses occurred on different occasions is a new rule announced in *Erlinger*. *See also Erlinger*, 602 U.S. at 859 n.3 ("For any case that is already final, the *Teague* rule will presumably bar the defendant from raising today's new rule in collateral proceedings.") (citation omitted) (Kavanaugh, J., dissenting).

The rule announced in *Erlinger*—that a jury, not a judge, must decide whether two ACCA predicate offenses occurred on two different occasions—is a procedural rule that does not apply retroactively. *See Welch*, 578 U.S. at 128 (procedural rules generally do not apply retroactively). As noted in *Schiro*, "requiring that a jury rather than a judge find the essential facts bearing on punishment," is a "prototypical procedural rule[]." *Schiro*, 542 U.S. at 353. And Mr. Griego does not argue that the rule is a "watershed rules of criminal procedure." *See Welch*, 578 U.S. 128. As such, *Erlinger* does not apply retroactively on collateral review. Notably, the courts that have already answered this question have largely found the same. *See Reed v. United States*, No. 1:23-cv-0910 KWR-KK, 2025 WL 1447308, at *9 (D.N.M. May 20, 2025) (holding

that *Erlinger* announced a new rule that does not apply retroactively on collateral review); *United States v. Hanford*, No. 3:24cv661 DRL, 2025 WL 90240, at \*3 (N.D. Ind. Jan. 14, 2025) (same); *United State v. Abney*, No. 5:24-076-DCR, 2024 WL 5055827, at \*3 (E.D. Ken. Dec. 10, 2024) (same); *Stackhouse v. United States*, No. 8:18-cv-772-VMC-TGW, 2024 WL 5047342, at \*8 (M.D. Fla. Dec. 9, 2024) (same); *Ursery v. United States*, No. 3:22-cv-00776, 2024 WL 4652209, at \*4 (M.D. Tenn. Nov. 1, 2024) (same); *Bawgus v. United States*, No. 2:22-CV-00132-JRG-CRW, 2024 WL 3837752, at \*4 (E.D. Tenn. Aug. 15, 2024) (same).

Because *Erlinger* does not apply retroactively, the Court must find that Mr. Griego's constitutional rights were not violated when a judge decided that his two residential burglaries occurred on the different occasions. *See Reed*, 39 F.4th at 1294–97; *Michel*, 446 F.3d at 1133.

## VI.    Certificate of Appealability

Lastly, Mr. Griego is not entitled to a certificate of appealability. No appeal may be taken from a "final order in a proceeding under section 2255" unless the petitioner first obtains a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability may be issued only if Mr. Griego "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A movant has made such a showing if "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and citation omitted). With the benefit of more time and case law than was available when Mr. Griego's initial petition was filed, I do not believe Mr. Griego has made a substantial showing of the denial of a constitutional right, as discussed more fully above. I therefore recommend that the Court deny Mr. Griego a certificate of appealability.

## VII.    Recommendation

I recommend that the Court find that:

1. Mr. Griego's commercial burglary conviction is not an ACCA predicate;

2. Mr. Griego's drug trafficking conviction is not an ACCA predicate;

3. Mr. Griego's two residential burglaries are each ACCA predicates;

4. Because *Erlinger* announced a new procedural rule that does not apply retroactively,
   Mr. Griego's constitutional rights were not violated when a judge, not a jury, decided
   that his two residential burglaries occurred on different occasions; and

5. Mr. Griego is not entitled to a certificate of appealability.

Because these recommended findings mean that Mr. Griego still has three ACCA

predicate offense—his two residential burglaries and aggravated battery—I find that Mr. Griego

is still subject to the ACCA mandatory minimum sentence. *See* 18 U.S.C. § 924(e). I therefore

recommend that the Court deny Mr. Griego's Motion to Vacate Sentence Under 28 U.S.C.

§ 2255 (Doc. 1) and dismiss the case with prejudice.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  Written objections must be both timely and specific.  *United States v. One Parcel of Real Prop., With Buildings, Appurtenances, Improvements, & Contents, Known as: 2121 E. 30th St., Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  Failure to file timely and specific objections will result in waiver of *de novo* review by a district or appellate court.  *Id.*  In other words, if no objections are filed, no appellate review will be allowed.**

---

JENNIFER M. ROZZONI
United States Magistrate Judge